## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SABRINA S. OVERFIELD,    )
    Plaintiff,     )
          )
v.          )    2021-CV- 4093
          )
STATE OF KANSAS,     )
    Defendant.    )
_____)

## COMPLAINT

The plaintiff, Sabrina S. Overfield, states and alleges the following claims for relief against the defendant, the State of Kansas:

## JURISDICTION AND VENUE

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq.; and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, et seq.

2. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331. The plaintiff's claims were included in a timely administrative charge filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter to the plaintiff regarding these claims, and this action was filed within 90 days after receipt of the right-to-sue letter.

3. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b)-(c).

**PARTIES**

4.      The plaintiff, Sabrina S. Overfield, is a female over the age of 40, and she resides in Independence, Kansas.  Ms. Overfield is employed by the State of Kansas, by and through the Office of Judicial Administration ("OJA").  At all times relevant to this lawsuit, Ms. Overfield was employed as a Court Reporter in the 11th Judicial District of Kansas, and she worked at the courthouse in Parsons, Kansas.  Ms. Overfield was employed in this position for over 23 years.

5.      The defendant, the State of Kansas, employs all judges and non-judges in the Kansas court system.  The OJA is the state agency which is responsible for personnel management of all non-judge employees in the Kansas court system.

**FACTUAL ALLEGATIONS**

6.      On January 10, 2020, Ms. Overfield engaged in a conversation with Fred W. Johnson, Jr., who is a District Court Judge in the 11th Judicial District of Kansas.  This conversation occurred in Judge Johnson's office at the Parsons courthouse, where Judge Johnson worked part of the time; Judge Johnson also worked part of the time at the courthouse in Oswego, Kansas.

7.      The conversation on January 10, 2020, between Ms. Overfield and Judge Johnson started out as a discussion on the topic of the three attorneys who had just been nominated to replace Judge Jeffrey Jack, who had recently retired as a District Court Judge in the 11th Judicial District, and for whom Ms. Overfield had primarily worked. After discussing this topic, Ms. Overfield and Judge Johnson next discussed the

possibility of moving a portion of the court docket of Labette County, Kansas, from the courthouse in Parsons to the courthouse in Oswego.

8.    At this point in the conversation on January 10, Ms. Overfield was ready to conclude her discussions with Judge Johnson, and to proceed to the nearby office of Terri Thurman, who was the District Court Clerk of the 11th Judicial District. However, Judge Johnson slammed his hand on his desk, and said in a loud, intimidating voice: "Sit down.  We need to have a talk."  Judge Johnson then asked Ms. Overfield why she had a problem with Judge Johnson's Court Reporter, and why Ms. Overfield would not help him in his courtroom. Ms. Overfield replied that she did not have a problem with Judge Johnson's Court Reporter, and that she was busy with work in her own courtroom. Ms. Overfield then suggested that they go back to conducting criminal dockets on Mondays in the Parsons courthouse, with Ms. Overfield's soon-to-be-appointed judge handling the morning docket, and Judge Johnson handling the afternoon docket.

9.    Judge Johnson then interrupted Ms. Overfield, and said in an angry, harsh, and threatening tone:  "I told you to sit down."  Judge Johnson next accused Ms. Overfield of being a liar, because she had told Judge Jack that she would not work for Judge Johnson.  Ms. Overfield then attempted to explain what she had actually said to Judge Jack, and the context of her statement.  But Judge Johnson interrupted her, slamming his hand on his desk, and said in an angry voice: "I told you to sit down and talk to me."

3

10. At this point, Ms. Overfield said to Judge Johnson, "you cannot talk to me like this." He responded, "yes, I can." Judge Johnson then slammed his hand again on his desk, and yelled in an angry voice: "I told you to sit down." Ms. Overfield became fearful for her safety, so she left Judge Johnson's office, and starting to walk to Ms. Thurman's office. As she was leaving, Judge Johnson yelled at her: "Get back here. I'm not done with you."

11. When Ms. Overfield arrived at Ms. Thurman's office, she asked Ms. Thurman if she had heard the exchange between Ms. Overfield and Judge Johnson. Ms. Thurman replied that she had heard part of it. Ms. Overfield was very upset, shaking, and fearful of what might happen next. Ms. Overfield then told Ms. Thurman that she was leaving for the day, and Ms. Thurman advised her to call Mac Young. Mr. Young is the District Court Administrator of the 11th Judicial District, and he is employed by the OJA.

12. Ms. Overfield called Mr. Young in her car on her way home on January 10, 2020. She told Mr. Young how Judge Johnson had verbally abused, threatened, and bullied her, just as he had previously mistreated other women in the workplace. She further told Mr. Young that nothing had been done when Judge Johnson had abused the other women in the workplace, and that she was not going to come back to work until something was done about Judge Johnson's abuse of her.

13. Mr. Young responded that Ms. Overfield would have to take vacation time if she did not return to work. Ms. Overfield replied that she should not be forced to take vacation time for a situation caused by a judge's hostile behavior towards women.

She further stated that something had to be done, or it was only going to get worse, and that the women did not deserve the way they were being mistreated. Mr. Young then told her to write a report of her encounter with Judge Johnson.

14.     During the afternoon of January 10, 2020, Ms. Overfield prepared a written report of her encounter with Judge Johnson earlier in the day. She concluded the report by stating in part:

> In conclusion, I love my profession and what it stands for and this affected me emotionally and physically to my core. I left work immediately after this incident because I was so shaken and crying, I couldn't perform my duties to my professional ability. . . . I am not sleeping well and I am continually thinking of this incident and I'm a nervous wreck realizing I will be going back to my job on Monday having to face Judge Fred Johnson. . . .   I have been verbally abused, intimidated, threatened, brow beat, and disrespected from the highest officer in the District Court and now fear what he might do and is capable of doing, mentally and physically, and this isn't his first incident with a State employee. I am the third State employee, that I know of, Judge Fred Johnson has treated like this, and I feel I am now working in a hostile environment.

15.     On Monday morning, January 13, 2020, Ms. Overfield returned to work at the Parsons courthouse. When she reached her office, she closed her door, and locked it. After lunch, she called Mr. Young and informed him that she was working in her office with her door shut and locked. She also told him that she had completed her written report about her encounter with Judge Johnson on January 10, and she asked how he wanted her to send it to him. Mr. Young told her to send the report to him by email. Ms. Overfield also told Mr. Young that she intended to file a complaint against Judge Johnson with the Kansas Commission on Judicial Conduct.

16.     During the afternoon on January 13, 2020, Ms. Overfield was working on court business in her office with her door shut and locked. While she was on the telephone with Sarah S. Beezley, an attorney in Girard, Kansas, Judge Johnson knocked on her door, saying in a loud voice:  "Why is this door locked?"  Ms. Overfield replied:  "I am here in my office working and on the phone."  Judge Johnson then said:  "Unlock this door.  I need in Judge Jack's office."  There was no reason for Judge Johnson to be in Judge Jack's office, because Judge Jack had recently retired, and there was only furniture in the office.

17.     Fearing that Judge Johnson wanted to threaten and verbally abuse her again, Ms. Overfield did not say anything further, and she did not unlock the door. Judge Johnson then said:  "I will just call Mac," and he left Ms. Overfield's door. Ms. Overfield was very upset and shaken by this encounter with Judge Johnson.  Ms. Beezley, who had remained on the telephone during this encounter, advised Ms. Overfield to leave her door locked, and to leave the courthouse.

18.     Ms. Overfield decided to take Ms. Beezley's advice, so she gathered her belongings, proceeded to her car, and called Mr. Young over the telephone.  She told Mr. Young about her encounter with Judge Johnson, explaining:  "I would not unlock my door because I told you I was working in a hostile environment on Friday."  Mr. Young responded:  "You need to unlock that door. He is a Judge and he can go anywhere he wants."

19.     Shortly after their telephone conversation on January 13, 2020, Mr. Young sent an email to Ms. Overfield, reprimanding her for locking her door. This email stated in

part: "You need to unlock the judges [sic] office and there is no need for you to have your door locked; you are of no help to anyone if you are behind a locked door."

20.    Later on January 13, 2020, Ms. Overfield supplemented the written report which she had prepared regarding her encounter with Judge Johnson on January 10, 2020, by adding a description of her encounter with him on January 13. Ms. Overfield concluded her description of the encounter on January 13 by saying:

> In conclusion, on this second day of bullying, harassing, and torment, by Judge Johnson, I feel it is a very hostile environment to work in and I plan to fulfill my job duties from home working on transcripts and filling in for the 14th Judicial District in Independence until something is done.

21.    On January 14, 2020, Ms. Overfield emailed to Mr. Young her written report regarding her encounters with Judge Johnson on both January 10 and January 13, 2020. Mr. Young, in turn, forwarded Ms. Overfield's written report on to Allison Christman, who is employed as the Director of Personnel of the OJA.

22.    On January 15, 2020, Ms. Christman talked to Ms. Overfield over the telephone about the written report which she had emailed to Mr. Young.  Ms. Christman told Ms. Overfield that she was only investigating Ms. Overfield's complaint against Mr. Young, and that Ms. Christman's office did not supervise or discipline district court judges. Ms. Christman also said that she could not tell Ms. Overfield whether or not her complaint against Judge Johnson had been referred to the Kansas Commission on Judicial Conduct ("KCJC").

23.    On January 16, 20209, Tasha N. Thurman filed a complaint against Judge Johnson with the KCJC.  Tasha Thurman had been employed as an Administrative

Assistant in the 11th Judicial District of Kansas from December of 2017 to December of 2018, and she worked in the Parsons courthouse, primarily for Judge Johnson.   Tasha Thurman summarized her complaint against Judge Johnson in these words:

> While I would like to say my time with the court was a privilege, I cannot. During my one year of employment, I endured a very hostile working environment. I was harassed, threatened, demeaned, belittled, berated, and verbally abused by District Judge Fred W. Johnson.  I was fearful every time I walked into his office.

24.     Tasha Thurman's complaint against Judge Johnson was supported by six typed pages of "information" and "incidents," which included the following:

> At some point in April [of 2018], I started to wonder if he had an anger problem because when he got irritated, his entire face was beet red, his eyes twitched, and he would sneer. I started becoming leery of my surroundings and had an uneasy feeling in my stomach. I wasn't sleeping.
>
> . . . .
>
> My first week on the job and multiple times throughout my one-year employment, he would make sure I knew he did not want me learning anything from Sabrina [Overfield] because she was terrible at her job, lazy, and did things wrong.

25.     Shortly after January 16, 2020, Ms. Overfield also filed a complaint against Judge Johnson with the KCJC.  This complaint consisted of the report which Ms. Overfield had prepared, describing her encounters with Judge Johnson on January 10 and 13, 2020. Ms. Overfield had previously emailed this report/complaint to Mr. Young, who had forwarded it on to Ms. Christman.

26.     Shortly after January 16, 2020, Terri Thurman also filed a complaint against Judge Johnson with the KCJC.  Terri Thurman is the mother of Tasha Thurman, and she

8

was then the District Court Clerk of the 11th Judicial District. Terri Thurman's complaint

likewise consisted of a report which she had prepared, describing various incidents

involving Judge Johnson since May of 2019. Terri Thurman had likewise previously

emailed this seven-page report/complaint to Mr. Young, and it included the following:

> May 9, 2019, was a changing day for me. I was
> attending a budget meeting with Judge Jeffry Jack, Judge Fred
> Johnson, and Mac Young, Court Administrator.  As we were
> finishing up our meeting, Judge Johnson looked at me and,
> said, 'I have a question for you.'  I said, 'Ok.'  Judge Johnson
> said, 'I want to know your retirement date.'  I replied, 'I don't
> have a date.'  Judge Johnson continued and said, 'You told
> Judge Jack and I that you are retiring in July.'  I said, 'I can't. I
> had hoped to retire in July but unsure with . . .' he cut me off,
> slammed his hand down on the table, and screaming at me
> pointing his finger saying, 'You told us you were retiring at
> Christmas and I want to know a date.' . . .  Judge Johnson
> proceeds to tell me I am toxic, 'you are a problem, you need to
> go. . .', you are rude, you are evil, and disrespectful!'
>
> . . . .
>
> I truly believe I am suffering from Post-Traumatic
> Stress Disorder. My physical health has also been affected. I
> feel counseling is necessary to help with the panic attacks.
> Once this report and investigation begins, I cannot return to
> work, in the same building with Judge Johnson, and feel safe.
>
> Sabrina Overfield and I are victims of working in a
> hostile work environment. Labette County District Court needs
> help so we feel safe to work here!  Someone MUST help us.
> We are literally in dire straits now.

28.     On February 18, 2020, Ms. Christman sent a letter to Ms. Overfield and

Judge Lynch, regarding her investigation of the report/complaint which Ms. Overfield had

emailed to Mr. Young on January 14, 2020. The first paragraph of this letter explained:

Ms. Overfield attached a statement with allegations of misconduct on the part of Judge Fred Johnson. The complaint also contained allegations that District Court Administrator (DCA) Mac Young failed to take appropriate action to support Ms. Overfield. The complaint regarding Judge Fred Johnson was sent to the Commission on Judicial Conduct as required by KCPR 9.3(c). I investigated only the allegations raised against Mr. Young.

29. Ms. Christman concluded her letter of February 18, 2020, by stating:

Taking all of the information I have in front of me, I find no failure to take action on the part of Mr. Young in this situation. I found there is a need for improved training on dealing with employee concerns and complaints. Mr. Young will be provided the training.

30. On May 4, 2020, the KCJC sent a letter to Ms. Overfield regarding her complaint of misconduct by Judge Johnson on January 10 and 13, 2020. This letter stated in relevant part:

After extensive review and discussion, the Commission concluded that the complaint contained issues that are personnel matters which should be handled administratively through human resources and did not contain facts establishing reasonable cause to support a finding that the judge's actions violated the judicial code. The Commission, therefore, dismissed the complaint.

31. On May 26, 2020, Ms. Overfield filed an administrative charge with the Kansas Human Rights Commission ("KHRC"), alleging that the State of Kansas had subjected her to harassment based upon her sex and her age. The administrative charge further alleged that the State of Kansas had retaliated against Ms. Overfield for opposing sex and age discrimination.

32.     On February 3, 2021, Ms. Overfield attended a meeting with Mr. Young and Judge Lynch, who was still the Chief Judge of the 11th Judicial District. During this meeting, Judge Lynch informed Ms. Overfield that Judge Johnson would be coming back to work in the Parsons courthouse, and that she would be working from home on the days when Judge Johnson was in the Parsons courthouse.

33.     During their meeting on February 3, 2021, Ms. Overfield asked Judge Lynch why he was rescinding his earlier administrative order entered on January 21, 2020, which assigned Judge Johnson exclusively to the Oswego courthouse. Judge Lynch explained that he did not have the authority to tell another judge where he could work.  This explanation did not make sense to Ms. Overfield because the administrative order of January 21, 2020, had been in effect for over one year.

34.     On February 10, 2021, Judge Lynch entered an administrative order which rescinded his earlier administrative order on January 21, 2020, assigning Judge Johnson exclusively to the Oswego courthouse. The new administrative order stated:

> Beginning March 1, 2021, Administrative Order No. 166, assigning Hon. Fred W. Johnson (D03) to set in Oswego is hereby rescinded.  At his discretion, Judge Johnson may schedule and hold court in either Oswego or Parsons.

35.     On May 26, 2021, Ms. Overfield filled out and signed an investigative questionnaire, which had been sent to her by the KHRC. One of the questions on the KHRC questionnaire was the following:  "What evidence is there to support that you were subjected to retaliation for having complained of sex and/or age discrimination. . .?"  Ms. Overfield answered this question by stating:

> As I stated [above], I have been with the State of Kansas since September of 1998. Every year, I have had an evaluation by my supervisor/judge. . . .  Those evaluations have stopped since I have filed this complaint with the State of Kansas. I am providing the last one I received in 2019, almost two years ago.

36.     On June 21, 2021, Ms. Overfield finally received her annual performance evaluation for the rating period of June 23, 2019, to June 23, 2020. This performance evaluation was prepared by Mr. Young, who gave Ms. Overfield an overall performance rating of "Successful."  Mr. Young's performance evaluation of Ms. Overfield was lower than her previous annual performance evaluations, which had consistently given her an overall performance rating of "Beyond Expectations."

## COUNT I:  HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII

37.     The above paragraphs are incorporated herein by reference.

38.     During her employment with the State of Kansas, Ms. Overfield was subjected to a hostile work environment, based on her sex or gender. This hostile work environment consisted of:  (a) Judge Johnson's threatening, demeaning, and abusive conduct toward Ms. Overfield herself, particularly on January 10 and 13, 2020; (b) Judge Johnson's threatening, demeaning, and abusive conduct toward other women in the workplace, specifically Tasha Thurman and Terri Thurman; and (c)  Mr. Young's retaliatory conduct toward Ms. Overfield.

39.     The discriminatory intimidation, ridicule, and insult to which Ms. Overfield with subjected was sufficiently severe or pervasive to alter the conditions of her

employment, and to create an abusive work environment. This abusive work environment violated Title VII.

40.     As a result of the abusive work environment to which she was subjected, Ms. Overfield has suffered damages in the form of emotional distress, mental anguish, loss of enjoyment of life, humiliation, and anger.  Ms. Overfield has also suffered damages in the form of economic loss.

WHEREFORE, Ms. Overfield prays for judgment against the State of Kansas for damages in excess of $75,000.00, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT II:  HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE ADEA

41.     The above paragraphs are incorporated herein by reference.

42.     The State of Kansas receives federal financial assistance. Therefore, pursuant to 42 U.S.C. § 2000d-7, the State of Kansas is liable for violating the ADEA.

43.     During her employment with the State of Kansas, Ms. Overfield was subjected to a hostile work environment, based on her age. This hostile work environment consisted of: (a) Judge Johnson's threatening, demeaning, and abusive conduct toward Ms. Overfield herself, particularly on January 10 and 13, 2020; (b) Judge Johnson's threatening, demeaning, and abusive conduct toward older women, particularly Terri Thurman; and (c) Mr. Young's retaliatory conduct toward Ms. Overfield.

44.     The discriminatory intimidation, ridicule, and insult to which Ms. Overfield with subjected was sufficiently severe or persuasive to alter the conditions of her

employment, and to create an abusive work environment. This abusive work environment violated the ADEA.

45.     As a result of the abusive work environment to which she was subjected, Ms. Overfield has suffered damages in the form of economic loss.

46.     In subjecting Ms. Overfield to an abusive work environment, because of her age, the State of Kansas willfully violated the ADEA.  Therefore, the State of Kansas is liable for liquidated damages.

WHEREFORE, Ms. Overfield prays for judgment against the State of Kansas for damages in excess of $10,000.00 plus attorney fees, prejudgment interest, and litigation costs.

## COUNT III:
## RETALIATION IN VOLATION OF TITLE VII

47.     The above paragraphs are incorporated herein by reference.

48.     Ms. Overfield engaged in protected activities under Title VII by opposing what she in good faith believed to be sex discrimination in the form of a hostile work environment. These protected activities included: (a) reporting to Mr. Young, both verbally and in writing, about her encounters with Judge Johnson on January 10 and 13, 2020; (b) filing a complaint with the KCJC, alleging misconduct by Judge Johnson; and (c) filing an administrative charge with the KHRC, alleging discrimination and retaliation by the State of Kansas.

49.     The State of Kansas, in violation of Title VII, retaliated against Ms. Overfield for engaging in protected activities. These retaliatory acts included:  (a) Mr. Young's

reprimands of Ms. Overfield on January 13, 2020; (b) the failure to conduct an annual performance of Ms. Overfield in the summer of 2020; (c) Judge Lynch's rescission on February 10, 2021, of his earlier administrative order, which assigned Judge Johnson exclusively to the Oswego courthouse; and (d) Mr. Young's annual performance evaluation of Ms. Overfield, which was lower than her previous evaluations.

50.     As a result of the retaliation to which she was subjected, Ms. Overfield has suffered damage is in the form of emotional distress, mental anguish, loss of enjoyment of life, humiliation, and anger.   Ms. Overfield has also suffered damages in the form of economic loss.

WHEREFORE, Ms. Overfield prays for judgment against the State of Kansas for damages in excess of $75,000.00, plus attorney fees, prejudgment interest, and litigation costs.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
        Alan V. Johnson, KS #9992
        ajohnson@sloanlawfirm.com
        534 South Kansas Avenue, Suite 1000
        Topeka, Kansas 66603-3456
        785-357-6311
        785-357-0152 facsimile
        Attorneys for Plaintiff

## <u>REQUEST FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
785-357-0152 facsimile
Attorneys for Plaintiff

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Topeka, Kansas, be designated as the place of trial in the above-captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
       Alan V. Johnson, KS #9992
       ajohnson@sloanlawfirm.com
       534 South Kansas Avenue, Suite 1000
       Topeka, Kansas 66603-3456
       785-357-6311
       785-357-0152 facsimile
       Attorneys for Plaintiffs