IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SABRINA S. OVERFIELD,

                Plaintiff,

v.                                                      Case No.  21-4093-JWB

STATE OF  KANSAS,

                Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for summary judgment.  (Doc. 37.) The motion has been fully briefed and is ripe for decision.  (Docs. 38, 41, 42, 43.)[1]  The motion is GRANTED for the reasons stated herein.

### I.    Facts

Plaintiff Sabrina Overfield was employed by the Eleventh Judicial District (the "district") at the Parsons Judicial Center in the State of Kansas from 1998 until December 6, 2021.  In the clerk's office of the district, there were typically five female employees, including the District Court Clerk Terri Thurman  ("Ms. Thurman").   Plaintiff worked for Judge Jeffrey Jack as an official court reporter.  In 2017, Judge Fred Johnson was appointed to the district.  After he was appointed, Tasha Thurman ("Ms. Tasha"), Ms. Thurman's daughter, was hired to be Judge Johnson's administrative assistant with the agreement that she would complete the court reporter certification within a year of her hiring.  She did not complete the certification and only worked

---

[1] Plaintiff moves for leave to file a surreply to address Defendant's arguments regarding its objections to certain statements of facts and the related exhibits.  (Doc. 46.)  Defendant has not filed a response.  After review, the court grants Plaintiff's motion and the court has considered the proposed surreply attached to Plaintiff's motion in ruling on summary judgment.

for Judge Johnson for one year. (Docs. 38 at 2–3; 41 at 2.) Plaintiff testified that she heard Judge Johnson telling Ms. Tasha that she needed to do a "better job" and asking her about her progress with her certification. (Doc. 38-11, Plaintiff Depo. at 97:20–98:4.) Plaintiff testified that she had observed Tasha crying at work. (*Id.* at 98:23–99:4.) Ms. Tasha submitted a complaint against Judge Johnson complaining that she felt threatened, degraded, and belittled during her employment. (Docs. 41 at 7; 42 at 10; 46 at 8.)[2] Tammy Thomas was Judge Johnson's subsequent court reporter. Plaintiff kept notes regarding Ms. Thomas's work activities, including Judge Johnson giving her permission to go to Oklahoma to deliver transcripts, take a two-week vacation, leave early, and work in Oswego where it was quiet. (*Id.* at 149:17–150:15.)

Plaintiff testified that Judge Jack experienced communication difficulties with Judge Johnson. From 2018-2019 there were several conflicts due to communication frustrations between Judge Johnson, Ms. Thurman, and Judge Jack. According to Plaintiff, Judge Johnson didn't want to work with anyone and when Ms. Thurman spoke with Judge Johnson regarding judicial courthouse procedures and policies, he would "put a wall up and want his way." (*Id.* at 49:9–16.) At some point, Judge Jack's position became vacant due to his retirement. In early 2020, the nominating commission interviewed judicial candidates to fill the vacancy. Plaintiff observed the interviews. After learning of the three names that would be submitted to the Governor by the nominating commission, Plaintiff visited Judge Johnson's chambers to discuss the nominees. Plaintiff asked Judge Johnson if he knew the three individuals. Judge Johnson responded that he knew those three would be selected. Plaintiff then stated that she was surprised about a comment (presumably made during the interviews by a third party) referencing moving docket activities

---

[2] Defendant objected to the consideration of this fact as inadmissible hearsay. (Doc. 43 at 3.) Plaintiff has now attached an affidavit from Tasha stating that the exhibit is a true and correct copy of her complaint against Judge Johnson.

from Parsons to Oswego because it "just isn't feasible." (Doc. 38-12 at 1.) Judge Johnson responded that he does that with his docket and Plaintiff responded that he doesn't do it "every day." (*Id.*) Judge Johnson then stated that another judge also has moved her docket to another city. Again, Plaintiff attempted to contradict Judge Johnson and stated "No, not all of it." (*Id.*) At this point, Plaintiff claimed she was done with the conversation but Judge Johnson slammed "his hand on his desk" and said "sit down, we need to have a talk," in an intimidating voice. (*Id.*) Plaintiff was standing at the door and did not move to sit down. Judge Johnson asked Plaintiff why she would not help him in his courtroom and why Plaintiff had a problem with Ms. Thomas. Plaintiff responded that she did not have a problem with Ms. Thomas and she was very busy. Plaintiff then suggested that Judge Johnson change the way that criminal dockets are handled. Judge Johnson rejected this suggestion on how he should handle his docket. Plaintiff then proceeded to attempt to "make another statement about why [she] thought it was best to go back to the old criminal docket." (*Id.* at 2.) Judge Johnson interrupted her and said, in an "angry and harsh and threatening" tone, that he "told [her] to sit down." (*Id.*) Judge Johnson accused Plaintiff of lying (about her excuse of being too busy to work for him) because she had previously told him that she would not work for him. Judge Johnson then stated that his court reporter had previously helped Judge Jack when they needed help in Judge Jack's courtroom. Plaintiff then "tried to explain" herself but Judge Johnson interrupted and slammed his hand on the desk again and said, "I told you to sit down and talk to me." (*Id.*) Plaintiff told him that he couldn't speak that way to her. Plaintiff stated that Judge Johnson said that he could, slammed his hand on the desk again, and yelled at her to sit down again. (*Id.*) During this interaction, Judge Johnson did not move from behind his desk and did not stand up. (Doc. 38-11, Plaintiff Depo. at 75:20–76:12.) Plaintiff testified that she was fearful that he was going to "get up and come after" her. (*Id.* at 75:1–3.)

Plaintiff left and was very upset.  Plaintiff went to the clerk's office and told Ms. Thurman that she was going home for the day.  Ms. Thurman told Plaintiff to call District Court Administrator Mac Young.  Both Plaintiff and Judge Johnson reported the interaction to Mr. Young who advised them to reduce it to writing.  (Docs. 38 at 5; 41 at 3.)

On Monday, January 13, 2020, Plaintiff reported to work.  After arriving, Plaintiff locked her door.  Plaintiff went to lunch and returned to work and again locked her door.  Plaintiff also locked the door to the visiting judge's chambers (previously Judge Jack's chambers) because it had a connecting door to her office which did not have a lock.  (Docs. 38 at 5; 41 at 3.)  That afternoon Judge Johnson went to the visiting judge's chambers.[3]  Upon discovering that the door was locked, Judge Johnson knocked on the door to the visiting judge's chambers.  Judge Johnson then knocked on Plaintiff's door and told Plaintiff to unlock the door because he needed in the visiting judge's chambers.  (Docs. 38 at 6; 41 at 4.)  Plaintiff did not unlock the door and Judge Johnson said that he would call Mr. Young and left.  Plaintiff called Ms. Thurman and asked her to make sure her door remained locked.  Plaintiff informed Ms. Thurman that she was leaving for the day.  (Docs. 38 at 6; 41 at 5.)  Plaintiff left work and called Mr. Young.  According to Plaintiff, she told Mr. Young that Judge Johnson told her to unlock her door and "this" door and that she refused to unlock the doors.  (Doc. 38-12 at 4.)  Mr. Young told Plaintiff that Judge Johnson can go where he wants to go and that she needed to unlock the door.  Mr. Young testified that he believed that Judge Johnson either needed documents or was going to leave documents in the

---

[3] Defendant cites to Judge Johnson's testimony in support of the position that Judge Johnson went to the visiting chambers to leave mail for Judge Fleming.  (Doc. 38 at 5.)  In response, Plaintiff contends this fact is controverted because Judge Fleming was not scheduled to be in the courthouse until the next month.  (Doc. 42, Exh. 1.)  While the court does not find that Plaintiff has controverted Defendant's fact regarding the reason Judge Johnson went to the visiting judge's chambers, the reason is not material to any fact at issue.

visiting judge's chambers on that day.  (Doc. 38-16, Young Depo. at 17:1–5.)  Later that afternoon,

Mr. Young sent Plaintiff an email that stated as follows:

> I am told that you have locked the door to the Judge's office as well as your own.
> Not appropriate. You need to unlock the Judge's office and there is no need for you
> to have your door locked; you are of no help to anyone if you are behind a locked
> door.

(Doc. 38-3.)

At that time, Mr. Young did not know that the connecting door did not lock.

Plaintiff did not receive a reprimand for locking the door and this incident was not

mentioned in her evaluations.  (Docs. 38 at 7; 41 at 6.)  The following day Plaintiff sent a

written complaint to Mr. Young and all of the district judges by email.  Her complaint was

then forwarded to Allison Christman, the Director of Personnel for the Office of Judicial

Administration ("OJA").  Ms. Christman and Plaintiff both submitted Plaintiff's complaint

to the Kansas Commission on Judicial Conduct ("KCJC").

In January 2020, Ms. Thurman also filed a complaint against Judge Johnson with

the KCJC.  According to Ms. Thurman, Judge Johnson was upset with her regarding the

fact that she did not retire when she had previously notified him that she was going to do

so.  (Docs. 41 at 8; 42 at 18; 46 at 9.)

Plaintiff did not return to work until January 21, 2020 when Chief Judge Oliver

Kent Lynch entered an administrative order stating that Judge Johnson would be sitting in

Oswego for court until further order.  (Doc. 36 at 3.)  Chief Judge Lynch testified that he

did not believe that he has personnel supervisory authority over another judge but that he

has authority regarding the assignment of cases.  (Docs. 38 at 7; 41 at 6.)  On May 4, 2020,

the KCJC found no reasonable cause to support a finding that Judge Johnson violated the

judicial code and dismissed Plaintiff's complaint.  (Doc. 36 at 3.)  Later that month,

Plaintiff filed an administrative charge with the Kansas Human Rights Commission ("KHRC").  (*Id.* at 7.)

In early January 2021, Plaintiff sent an email to Chief Judge Lynch and Mr. Young. In the email, she voiced concerns regarding Judge Johnson's proposed return to the Parson's courthouse during the first week of February.  Plaintiff stated that she was uneasy about it and did not feel comfortable being "alone" in the courthouse with him.  (Doc. 42 at 16.)   On February 20, 2021, Chief Judge Lynch entered an administrative order rescinding the previous administrative order regarding Judge Johnson's assignment to Oswego.  (Doc. 36 at 3.)

Although Judge Johnson returned to work in Parsons, Plaintiff and Judge Johnson did not personally interact and have not encountered each other since January 13, 2020. Plaintiff was allowed to work remotely on any days that Judge Johnson was in Parsons and Plaintiff had the ability to see Judge Johnson's schedule through a shared work calendar. (Docs. 38 at 8; 41 at 6.)  Prior to February 2021, Plaintiff had previously worked remotely on some days due to the COVID-19 pandemic.   Working remotely, however, causes additional difficulties for Plaintiff to perform her job.  (Doc. 42 at Exh. 1, Plaintiff's Declaration.)  Those include difficulties transcribing hearings because the sound system was not very good over the computer, having to use her personal phone to contact parties, and not having the benefit of her co-workers to assist in other tasks.  (*Id.*)  After Judge Johnson returned to the Parsons' courthouse, Plaintiff stated that he would routinely leave her off of email communications regarding Zoom meetings or other staff meetings.  (Doc. 38-11 at 167:24–168:12.)  Ms. Thurman would always inform Plaintiff of the meetings when Judge Johnson failed to include Plaintiff in an email.  (*Id.* at 168:13–19.)

Under the Kansas Court Personnel System Rules, employees must have annual performance evaluations that are completed by the immediate supervisor or another qualified person.  The evaluations include the following rating options for various job requirements: Beyond expectations; successful; and unacceptable.  The evaluations also included an overall rating.  To obtain a pay increase and longevity bonus, an employee must have at least a successful rating.  Plaintiff historically received an overall rating of beyond expectations from Judge Jack.  Plaintiff's 2019-2020 evaluation was not completed until the summer of 2021.  After consultation with Ms. Christman, Mr. Young did not complete the evaluation because he had been named in Plaintiff's complaint pending with the KHRC.  Chief Judge Lynch declined to complete the evaluation because he said that he did not have enough experience with Plaintiff to do so.  The next chief, Judge Robert Fleming, also declined to complete the evaluation.  At an unknown date, Plaintiff asked Mr. Young about the status of her evaluation.  Ultimately, Mr. Young asked Plaintiff if she objected to him completing the evaluation.  She did not.  Mr. Young completed the evaluation and gave Plaintiff a rating of successful in all categories which he considered to be a good evaluation.  Plaintiff disagreed with the evaluation and Chief Judge Fleming revised it to an overall rating of beyond expectations.  Mr. Young's evaluation was not made part of Plaintiff's employment records.  (Docs. 38 at 8–11; 41 at 6.)

In the fall of 2021, Plaintiff was hired as a court reporter for the 14th Judicial District.  Plaintiff was paid the same salary she was earning at the district.  On her last evaluation in the new district, Plaintiff's judge gave her an overall rating of successful. (Docs. 38 at 11; 41 at 6.)

On December 28, 2021, Plaintiff filed this action against the State of Kansas. (Doc. 1.) Plaintiff brings two claims under Title VII: hostile work environment based on her sex and retaliation.[4]  Defendant moves for summary judgment on both claims.

## II.    Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986) (emphases in original). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III.    Analysis

### A.  Hostile Work Environment

Title VII prohibits discrimination on the basis of sex. Plaintiff can establish her claim of a hostile work environment based on unlawful sex discrimination by showing "(1) [s]he was discriminated against because of [her] sex, and (2) that the discrimination was sufficiently severe

---

[4] The court previously entered an order dismissing Plaintiff's claim under the Age Discrimination in Employment Act. (Doc. 18.)

or pervasive such that it altered the terms or conditions of his employment." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). "An employer can be held liable if its employees create a hostile work environment and it knew or should have known about the conduct but failed to stop it." *Id.* (internal quotation and citation omitted).

The first element requires Plaintiff to demonstrate that she was discriminated against because of her sex although her sex need only be a "motivating factor." *Id.* To make this showing, a plaintiff can point to "facially sex based" acts of harassment. *Id.* "Also, facially sex-neutral conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *Id.* As to the second element, the conduct must be sufficiently severe or pervasive as to alter the terms of employment. *Id.* at 1252. In making this determination, the court looks to the "totality of the circumstances" and "consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012)).

Defendant argues that it is entitled to summary judgment because Plaintiff has not put forth evidence that the harassment she complains of was because of sex or that it was sufficiently severe or pervasive. Alternatively, Defendant argues that it cannot be liable as her employer.

### 1.   Because of Sex

Plaintiff's primary argument in support of this element is that male employees were treated differently by Judge Johnson. (Doc. 41 at 16–17.) A plaintiff may show that the discrimination was because of sex by proving that the "harasser treats men and women differently in the workplace." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). In support of her

position that Judge Johnson treats men and women differently, Plaintiff has submitted an affidavit that states Judge Johnson always "treated male employees with respect" and that she never observed him treat males in the "same harassing and abusive manner which he treated me." (Doc. 42 at 3.)[5]  This statement is vague and conclusory.  Plaintiff has failed to put forth any examples of how Judge Johnson has treated Plaintiff differently than a male employee.  A vague and conclusory generalization that males are treated better is not sufficient to create a general issue of material fact on this issue.  *Bird v. W. Valley City*, 832 F.3d 1188, 1206–07 (10th Cir. 2016).

Although Plaintiff makes no attempt to argue that the incidents she complains of involve overtly gender-based conduct, the court will review the facts in a light most favorable to Plaintiff to determine whether there is a genuine dispute of fact as to whether the harassment was because of Plaintiff's sex.

Plaintiff asserts that the following incidents establish her claim of hostile work environment: 1) Judge Johnson's conduct on January 10, 2020; 2) Judge Johnson's conduct interfered with her work performance, she had to work remotely to avoid him, and she did not work from January 13 to 21, 2020; 3) Judge Johnson refused to communicate with Plaintiff after he returned to Parsons; 4) Mr. Young subjected Plaintiff to a verbal and written reprimand on January 13, 2020; 5) Plaintiff's evaluation was untimely; 6) Chief Judge Lynch's rescission of the order concerning Judge Johnson's location assignment; 7) and Judge Johnson's treatment of Ms. Thurman and Ms. Tasha.  For most of these incidents, Plaintiff has conceded that most of these incidents are "gender-neutral." (Doc. 41 at 18–19.)

Turning to the first incident on January 10, Plaintiff's recitation of the events shows that she initiated a conversation regarding a potential judicial nominee.  This conversation then led to

---

[5] Defendant objects to this statement in the declaration as a sham.  (Doc. 43 at 6.)  The court need not address Defendant's position, however, in light of the finding that the statement is not sufficient to create an issue of fact.

Plaintiff discussing the location of court for certain judges.  A review of Plaintiff's version of events shows that Plaintiff was quick to disagree with Judge Johnson's responses.  Judge Johnson then asked Plaintiff to sit down to talk.  Plaintiff did not want to do so but then went on to make suggestions to Judge Johnson regarding his criminal docket.  Judge Johnson became increasingly upset with Plaintiff.  At no time, however, did Judge Johnson make any remarks that would indicate that his actions were because of Plaintiff's sex.  Rather, as Defendant contends, it appears that he was upset about her not being available to cover his court when he needed assistance and her suggestions regarding how he should handle his docket.  Therefore, this facially gender-neutral incident has a reasonable explanation that has nothing to do with Plaintiff's sex.  Plaintiff makes no argument that any of his actions were gender-based and the court finds that a reasonable jury could not find that Judge Johnson's actions on January 10, 2020, were because of Plaintiff's sex.

Next, Plaintiff has asserted that Judge Johnson interfered with her ability to go to work for one week in 2020 and that she had to work remotely to avoid him.  Plaintiff fails to explain how her absence from work and her ability to work remotely was due to gender-based discrimination.  Although not specifically asserted by Plaintiff, the court further finds that the January 13 incident where Judge Johnson tried to get into the visiting chambers was not gender-based conduct nor could a reasonable juror find it amounted to sex discrimination.

The next four instances asserted by Plaintiff have been identified by her as "gender-neutral."  Gender-neutral conduct can support a finding of gender animus when the conduct is viewed in the context of other, overtly gender-discriminatory conduct.  *Throupe*, 988 F.3d at 1251.  Plaintiff, however, has not  cited evidence of overtly gender-discriminatory conduct.

Plaintiff also contends that the evidence of the treatment of Ms. Thurman and Ms. Tasha support her claim.  Plaintiff may rely on evidence that Judge Johnson "directed gender-based

comments to other [employees] to help establish a general atmosphere of harassment provided she was aware of such conduct." *Doe v. Hutchinson*, 728 F. App'x 829, 832–33 (10th Cir. 2018). Plaintiff's conclusory statements that these women were harassed and abused is insufficient to support sex discrimination. Viewing the evidence in a light most favorable to Plaintiff, there is evidence that Judge Johnson was upset with Ms. Tasha for not completing her court reporter certification, was critical of her work, and that he questioned Ms. Thurman regarding her retirement. After review, the court finds that these facially gender-neutral incidents have explanations that have nothing to do with the fact that the employees involved were females. Further, Plaintiff has not shown that Judge Johnson directed any **gender-based** comments to these two women.

Viewing the evidence in a light most favorable to Plaintiff, a jury could not reasonably conclude that the conduct Plaintiff complains of was motivated by sex. Because Plaintiff has failed to put forth evidence showing that Judge Johnson's conduct was because of Plaintiff's sex, the sex-neutral conduct cannot raise an inference that she was treated a certain way because she is a woman. *Throupe*, 988 F.3d at 1254. Therefore, Defendant is entitled to summary judgment.

### 2.     Severe or Pervasive

Further, even if Plaintiff had met her burden to create an issue as to the first element, the court would grant summary judgment on the second element. To survive summary judgment, Plaintiff must show that a rational jury could find that "her workplace was permeated with discriminatory intimidation, ridicule and insult, that [was] sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Riske v. King Soopers*, 366 F.3d 1085, 1091 (10th Cir. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17,

21 (1993)).  The court is to evaluate this element both objectively and subjectively.  *Throupe*, 988 F.3d at 1252.

Here, plaintiff claims that Judge Johnson discriminated against her because of her sex by yelling at her and slamming his hand on his desk on January 10, 2020, trying to enter the locked door of the visiting judge's chambers on January 13, 2020, being upset with his assistant for her work performance, yelling at Ms. Thurman on one occasion about her retirement, and ignoring Plaintiff by refusing to email her.  Plaintiff also complains of a late evaluation, Mr. Young's reprimand, and the recission of the order regarding Judge Johnson's work assignment.  Viewing all of these incidents in a light most favorable to Plaintiff, the court concludes as a matter of law that no reasonable employee would have perceived Judge Johnson's conduct as severe or pervasive.  *See Morris v. City of Colorado Springs*, 666 F.3d 654, 665–68 (10th Cir. 2012) (discussing few or isolated incidents where the element of severity is met, which included assault and the groping of body parts).  Although the court does not condone yelling at staff in the workplace, Title VII is not "a general civility code for the American workplace."  *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998).  Title VII requires that the harassment be "because of ... [the plaintiff's] sex."  42 U.S.C. § 2000e–2(a)(1).

Defendant is therefore entitled to summary judgment on Plaintiff's hostile work environment claim.

## B.  Retaliation

Next, Plaintiff alleges that Defendant retaliated against her for engaging in protected activity.  Plaintiff must establish this claim under the burden-shifting framework in *McDonnell Douglas*.  Under that framework, Plaintiff must first establish a prima facie case of retaliation by showing 1) that she engaged in protected opposition to discrimination, 2) "that a reasonable

employee would have found the challenged action materially adverse," and 3) "that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007)).  After establishing her prima facie case, the burden shifts to Defendant "to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Id.* (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015)).  Pretext can be shown by providing direct evidence discrediting the proffered rationale, or by showing that Plaintiff was treated differently from others who were similarly situated, or it can be inferred "from evidence revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in Defendant's explanation.  *Id.*

Defendant moves for summary judgment on the basis that Plaintiff's January 2021 email was not protected activity; that Plaintiff did not sustain an adverse employment action; and that Plaintiff has not shown any causal connection between the protected activity and an adverse action.

### 1.      Protected Activity

Plaintiff must meet an initial hurdle of showing that she engaged in protected activity.  To engage in protected opposition to discrimination, Plaintiff must oppose an employment practice made unlawful by Title VII.  *Faragalla v. Douglas County Sch. Dist. RE 1, et al.*, 411 F. App'x. 140, 148 (10th Cir. 2011).  Title VII makes it unlawful for an employer "to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.  § 2000e-2(a)(1).  A plaintiff therefore engages in protected activity if she opposes employment discrimination based on one of these protected categories.  *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011) ("Protected activity consists of

activity opposing or complaining about discrimination by the employer based on race, color, religion, gender, or national origin."); *Faragalla*, 411 F. App'x. at 148.  The filing of a formal charge constitutes protected activity as well as voicing informal complaints to superiors.  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007) (citing *Hertz v. Luzenac America, Inc*., 370 F.3d 1014, 1015 (10th Cir. 2004)).  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]."  *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008).  A "vague reference to discrimination...without any indication that this misconduct was motivated [a] category protected by Title VII[] does not constitute protected activity and will not support a retaliation claim."  *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004).

Plaintiff has identified four instances in which she claims to have engaged in protected activity: Plaintiff's verbal complaints to Mr. Young on January 10 and 13, 2020; her formal complaint against Judge Johnson with the Kansas Commission on Judicial Conduct in January 2020; her complaint with the KHRC in May 2020; and an email in January 2021 regarding Judge Johnson's plans to work in the Parsons courthouse.  Defendant does not dispute that the first three actions taken by Plaintiff are protected activity as they include formal complaints and an informal complaint.

Defendant argues that Plaintiff's January 2021 email is not protected activity.[6]  The email, according to Plaintiff, "voiced her concerns to Judge Lynch and Mr. Young during the last week of January of 2021 regarding Judge Johnson's plans to work in the Parsons courthouse during the

---

[6] The January 2021 email was not identified as a basis for Plaintiff's retaliation claim in the pretrial order.  (Doc. 36 at 6–7.)  As a result, Plaintiff failed to preserve her claim on this basis.  Nevertheless, the court further finds that the email does not constitute protected activity.

first week of February." (Doc. 41 at 21.)  The court agrees with Defendant  that Plaintiff merely expressed her concerns about being in the courthouse with Judge Johnson and that she would be uncomfortable when he returns.  Plaintiff's email cannot be characterized as making an informal complaint regarding discrimination.  Plaintiff had previously made both informal and formal complaints about Judge Johnson's behavior in 2020 and she does not raise any new allegation of discrimination or retaliation in her email.  A complaint about unfair treatment in general is not "protected opposition to discrimination unless the basis for the alleged unfair treatment is some form of unlawful discrimination in violation of Title VII."  *Faragalla*, 411 F. App'x at 148. Therefore, the email is not protected activity as Plaintiff did not convey any concern regarding unlawful discrimination.  *Id.*; *see also Hinds*, 523 F.3d at 1203.

### 2.      Adverse Action

Next, Plaintiff must show that Defendant subjected her to a material adverse employment action as a result of her protected activity.  Although Plaintiff had identified four adverse employment actions in the pretrial order, Plaintiff has elected to proceed on her retaliation claim on only one alleged adverse action—Judge Lynch's recission of the administrative order regarding Judge Johnson's assignment to the Oswego courthouse in February 2021.  (Docs. 36 at 10; 41 at 21–22.)  Defendant argues that this is not an adverse employment action.  The court agrees.

In support of her position that the recission of the order was an adverse action, Plaintiff generally cites to *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233 (10th Cir. 2015).  (Doc. 41 at 22.) Plaintiff, however, does not provide further argument and the facts in *Lounds* are inapposite.  *See id.* at 1237–38.  (discussing the adverse actions as discipline and termination).  Essentially, Plaintiff argues that the recission of the order substantially interfered with her work because she now had to work remotely (by choice) so that she wouldn't run into Judge Johnson.  Notably,

Plaintiff has failed to present any facts that Defendant required Plaintiff to work for Judge Johnson or even be in the same courtroom as Judge Johnson.  Moreover, Plaintiff had no in-person contact at all with Judge Johnson after January 2020.  In *Turrentine v. United Parcel Service, Inc*., 645 F. Supp. 2d 976 at 990–991 (D. Kan. 2009), this court addressed whether requiring a plaintiff to start work at a certain time was an adverse action because the plaintiff was required to see her harasser at the start time.  The court held that it was not a materially adverse action.  *Id.* (citing *Smith v. Jackson*, 539 F. Supp. 2d 116, 141–42 (D.D.C. 2008) (no materially adverse action based on plaintiff's "dissatisfaction" at having to work in physical proximity to alleged harasser where plaintiff was not required to have direct contact with alleged harasser).  With respect to the circumstances here, the court similarly finds that a reasonable employee would not find the recission of the order to be materially adverse.

### 3.     Causation

Even if the recission of the order could be considered materially adverse, Plaintiff has failed to establish causation.  The prior protected activity included Plaintiff's January 2020 informal and formal complaints and her May 2020 KHRC complaint.  Plaintiff argues that she has established causation based on temporal proximity of the protected activity and the adverse action.  Although a retaliatory motive may be inferred when adverse action closely follows protected activity, a long period of time will not suffice to show a causal connection.  *See e.g., Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."); *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999) (noting that a three-month period is insufficient to establish causation); *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (finding that a 46-day period between the protected activity and the allegedly retaliatory action "barely" supports an inference of causation).

Here, there was an 8-month delay between the May 2020 KHRC complaint and Judge Lynch's February 2021 decision rescinding the order, which is insufficient to show a causal connection. Plaintiff offers no further argument to establish causation.

Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV.     Conclusion

Defendant's motion for summary judgment (Doc. 37) is GRANTED.  Plaintiff's amended motion to file a surreply (Doc. 46) is GRANTED.  The clerk is ordered to enter judgment in favor of Defendant.

IT IS SO ORDERED.  Dated this 9th day of March 2023.

  s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
